**DEAN, Collector of Internal Revenue, et al. v. HOFFHEIMER BROS. CO.**

Circuit Court of Appeals, Sixth Circuit. December 11, 1928.

No. 5129.

William E. Davis, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Haveth E. Mau, U. S. Atty., of Cincinnati, Ohio, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellant.

Thos. L. Pogue, of Cincinnati, Ohio (Alfred G. Allen and Pogue, Hoffheimer & Pogue, all of Cincinnati, Ohio, on the brief), for appellee.

Before MACK, MOORMAN, and HICKS, Circuit Judges.

MOORMAN, Circuit Judge. As a result of the passage of the Food Control Act (40 Stat. 273, 276) appellee was compelled to close its distillery in September of 1917. Because of that act and the imminency of the adoption of the Eighteenth Amendment, it determined May 2, 1918, to discontinue its business as a distiller and manufacturer of whiskies. At that time the depreciated cost or March 1, 1913, value of its distilling properties was $223,632.11. On June 29th it charged off on its books against this a loss in useful value, not including real estate, of $140,152.32. The property was sold in April, 1919, for $25,000, which included real estate of the value of $10,000, but did not include a storage account of $30,000. This was as much as the property was worth at any time subsequent to May 2, 1918. In its income tax return for its fiscal year ending June 30, 1918, appellee claimed the loss which it had charged off on June 29th. Disallowing the claim as made, the Commissioner of Internal Revenue treated the difference between the

depreciated cost or March 1, 1913, value and the proceeds of sale as obsolescence, allocating it to the year in question and the succeeding year. Appellee paid the resulting additional tax and filed this suit against the collector to recover it. Under written waiver of jury there were findings of fact by the trial court upon which judgment was rendered for the amount claimed, with interest.

The collector contends that, inasmuch as the property was not sold until 1919, there was no loss sustained in the preceding taxing year, and alternatively, that the most appellee was entitled to was that year's pro rata of an obsolescence running from September 10, 1917, when the plant was closed, to April 9, 1919, when the property was sold. We cannot agree with either of these contentions.

Three months after appellee had been compelled to suspend its business by the Food Control Act, and while that act was still in effect, the National Prohibition Amendment was passed by Congress. At that time 33 states of the Union had adopted state-wide prohibition. By May 1st 12 states of the Union, some of which had not theretofore had state prohibition, had already ratified the amendment. The state of Kentucky, in which appellee's distillery was situated, then had prohibition in 107 out of the 120 counties, and in November, 1918, was to vote upon state-wide prohibition. It was therefore certain on May 2, 1918, as the lower court found, that appellee's property could never again be used for distillery purposes. The court also rightly found that the property was not adaptable to other uses, and that appellee sustained a greater loss in its useful value during the taxing year than it charged on its books.

The applicable Revenue Acts are the Act of 1916 (39 Stat. p. 756), as amended by the Acts of 1917 (40 Stat. p. 300) and 1918 (40 Stat. p. 1057). All of these acts permit a corporation to deduct from its gross income losses sustained during the taxable year not compensated for by insurance or otherwise if incurred in trade or business. We have been cited to no court decision construing these provisions with reference to a case like this, but the Treasury Department, in article 143 of Regulation 45, quoted in the margin,[1] has construed them as applicable to a loss resulting from new legislation which has made the continued profitable use of the property impossible. This, we think, is a fair interpretation. The regulation is even more authoritative as to methods of ascertaining the loss, since they are administrative functions with which the statute does not deal. And neither under the language of the regulation nor under the decisions of the Board of Tax Appeals (Dillon Cotton Mills, 2 B. T. A. 127, and Automatic Transportation Co., 3 B. T. A. 505) is it necessary that the fact or amount of loss be ascertained by sale. It may be ascertained by other means; and when so ascertained, as here, is, in our opinion, a completed loss deductible from the gross income for the year in which it was sustained. Appellee, it is true, failed to charge off as large a loss as it might have charged off, but that affords no basis for contending that what it did charge off was not a loss.

The judgment is affirmed.

---

[1] Article 143. *Loss of Useful Value.* "When through some change in business conditions the usefulness in the business of some or all of the capital assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in the business, he may claim as a loss for the year in which he takes such action the difference between the cost or the fair market value as of March 1, 1913, of any asset so discarded (less any depreciation sustained) and its salvage value remaining. This exception to the rule requiring a sale or other disposition of property in order to establish a loss requires proof of some unforeseen cause by reason of which the property must be prematurely discarded, as, for example, where an increase in the cost of or other change in the manufacture of any product makes it necessary to abandon such manufacture, to which special machinery is exclusively devoted, or where new legislation directly or indirectly makes the continued profitable use of the property impossible. This exception does not extend to a case where the useful life of property terminates solely as a result of those gradual processes for which depreciation allowances are authorized. It does not apply to inventories or to other than capital assets. The exception applies to buildings only when they are permanently abandoned or prematurely devoted to a radically different use, and to machinery only when its use as such is prematurely abandoned. Any loss to be deductible under this exception must be charged off on the books and fully explained in returns of income. But see articles 181-189."