**LIBERTY BAKING CO. v. HEINER, Collector of Internal Revenue.**

District Court, W. D. Pennsylvania. May 11, 1929.

No. 5873.

James Walton, of Pittsburgh, Pa., for plaintiff.

J. D. Meyer, U. S. Atty., John A. Mc-Cann, Sp. Asst. U. S. Atty., both of Pittsburgh, Pa., and J. W. Hussey, Sp. Atty., of Washington, D. C. (C. M. Charest, Gen. Counsel, Bureau Internal Revenue, of Washington, D. C., of counsel), for defendant.

SCHOONMAKER, District Judge. This is an action to recover additional income and profits taxes for the year 1918, alleged to have been illegally collected by the defendant from the plaintiff, as well as certain overpayments of taxes for the years 1919, 1920, and 1921, alleged to have been unlawfully applied by the Commissioner of Internal Revenue to the credit of the 1918 taxes. A jury trial was waived, and the case was heard on the pleadings and proofs.

There is involved in the suit: (1) The validity of two waivers purporting to be executed by the plaintiff and the Commissioner of Internal Revenue, one dated February 4, 1924, and the other dated November 29, 1924; and (2) the right of the plaintiff to claim, as deductible losses in 1918, the following three items:

(a) The value of buildings demolished in 1918 to make way for plant extensions when the premises on which the buildings were located were purchased by the plaintiff in 1916 for the very purpose of providing space for plant extensions;

(b) Loss alleged to have accrued in 1918 through the fact that a patent flour milling process which the plaintiff bought that year proved to be worthless; and

(c) Loss alleged to have accrued in 1918 through the fact that certain paper breadloaf wrappers known as the "Victory Wrappers" were too small for the loaves of bread baked after the Armistice of November 11, 1918, and two wrappers were then used to cover one loaf until such time as plaintiff could purchase larger wrappers of a size sufficient to inclose the larger size loaf of bread which the plaintiff then made.

From the pleadings and proofs, we make the following findings of fact essential to a determination of these issues:

### Findings of Fact.

The plaintiff is a Pennsylvania corporation domiciled at Pittsburgh.

On June 14, 1919, the plaintiff filed with C. G. Lewellyn, collector of internal revenue for the Twenty-Third district of Pennsylvania, its income and profits tax return for the year 1918, showing a tax liability of $56,170.88, of which amount it paid Lewellyn, then the collector, $27,171.69, and later in August, 1919, filed a claim with the Commissioner of Internal Revenue for the abatement of the entire unpaid balance of taxes shown to be due on that return. Collection thereof was withheld, but the amount of such balance was later paid to the defendant as collector in August, 1922.

In connection with this return, the plaintiff then filed two petitions with the Commissioner of Internal Revenue under sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093) for special consideration of its tax liability for the year 1918, on the ground that, when regularly computed under the statute, the amount thereof was excessive.

Then began a series of audits and examinations of the financial records and accounts of the plaintiff by revenue agents, in the course of which, in March, 1921, the plaintiff filed an amended tax return in which several of the entries on the original return were reversed and several deductions claimed on the original return were abandoned. The plaintiff's accounts were then re-examined by revenue agents.

After much intervening correspondence and negotiations between the plaintiff and the Commissioner of Internal Revenue, that officer, on May 29, 1923, notified the plaintiff that its correct tax liability for the year 1918 was $66,564.79, or $10,393.91 in excess of the amount shown on the original return. This amount was placed by the Commissioner on the assessment list of October, 1923, and forwarded to the defendant as collector, for collection.

The plaintiff did not pay this amount and filed a claim in abatement, and collection thereof was withheld pending further consideration of the case. In November, 1923, after protests from the plaintiff as to its liability for additional assessment, the financial records of the plaintiff were examined again by revenue agents, and on their report, on January 9, 1924, the Commissioner notified the plaintiff of a proposed further additional assessment for the year 1918 of $13,712.27. This proposition met with protest and opposition from the plaintiff, in the form of a letter (Govt. Exhibit 1) under date of February 4, 1924, signed by the president of the plaintiff company with its corporate seal affixed, and verified before a notary public, in which,

among other things, the plaintiff said to the Commissioner of Internal Revenue: "The taxpayer protests against this proposed assessment and also the assessment of October 1923, the collection of which is being withheld, and appeals to you to take such action as is necessary to protect it from the further assessment or collection of any tax until you have had the necessary time in which to review the protest and appeal and supporting data, which the tax-payer will submit, in order to arrive at a correct determination of the liability of the taxpayer for the year 1918. · * * A waiver is enclosed for the year 1918 in order that the department may be fully protected in regard to any statute of limitations for the assessment of taxes for that year."

The written waiver inclosed, dated February 4, 1924 (Govt. Exhibit No. 27), was signed by the president and secretary of the plaintiff and its corporate seal was affixed. By its terms, the plaintiff consented to the "determination, assessment and collection" of any taxes for the year 1918 for "one year after the expiration of the statutory period of limitations." A photostatic copy of this waiver bearing the purported signature of the Commissioner, duly certified as required by statute, was produced on the trial and offered in evidence.

The additional assessment of $13,712.27 was added to the March assessment list and placed in the hands of the defendant for collection. That assessment the plaintiff did not pay, but filed a claim for the abatement thereof, and collection was withheld pending further consideration of the case.

In March, 1924, in connection with a brief and protest filed with the Commissioner for the first time in course of the dispute of taxes for the year 1918, plaintiff presented a claim for loss of certain buildings demolished to make room for plant extensions. This all resulted in a further examination of plaintiff's books and accounts in September, 1924.

Under date of November 29, 1924, the plaintiff filed with the Commissioner a second waiver (Govt. Exhibit 29), by which it consented to the extension of the period for "determination, assessment and collection" of taxes for the years 1918 and 1919 for one year "after the expiration of the statutory period of limitations within which assessments of taxes may be made for the year or years mentioned, or the statutory period as extended by section 277(b) of the Revenue Act of 1924, or by any waivers already on file with the bureau." This waiver bears the

signature of the president of the plaintiff, and its corporate seal is affixed as well as the purported signature of the Commission. A photostatic copy thereof from the files of the Commission, duly certified as prescribed by statute, was offered in evidence.

After the re-examination of plaintiff's books in November, 1924, the Commissioner, in 1925, determined to allow to the plaintiff a special assessment under the provisions of the sections 327 and 328 of the Revenue Act of 1918. This resulted in the allowance of a certificate of overassessment for the year 1918 by the Commissioner of $8,871.26. On July 7, 1925, the Commissioner notified the plaintiff of his determination, and fixed the final amount of tax due for the year 1918. Then, in adjustment of the additional assessment of October, 1923, amounting to $10,393.91, the commissioner credited overpayments of taxes by the plaintiff for the year 1919, $255.19; for the year 1920, $4,640.73; and for the year 1921, $486.29. The balance of the assessment, $5,011.70, was abated. Of the additional assessment of March, 1924, $13,712.27, $3,859.56 was abated and an amount of $177.17, an overpayment of original tax for the year 1919, was credited, leaving the balance due on this assessment of $9,675.54. From this assessment the plaintiff appealed to the United States Board of Tax Appeals within the 60-day period allowed by law. This Board heard the appeal and sustained the findings of the Commissioner. Liberty Baking Co. v. Commissioner of Internal Revenue, 6 B. T. A. 1270. The Board entered its final order on November 14, 1927, showing the amount due on the tax for 1918 to be $9,675.54, which amount, plus interest, $1,183.32, was paid by the plaintiff to the defendant under duress on December 29, 1927. Then, on January 7, 1928, the plaintiff filed a claim for refund, as prescribed by law; and no action thereon was taken by the Commissioner, though more than six months have elapsed since the filing of the same.

In November, 1916, the plaintiff bought additional ground adjoining its plant for future extension of its plant. There were three buildings on this land valued at $11,000 which the plaintiff demolished in 1918 and 1919 to make room for its plant extensions. The plaintiff, in March, 1924, claimed this item as deductible loss from its 1918 tax liability. The Commissioner did not allow the claim.

On October 24, 1927, the plaintiff made an agreement with the Charles Herendeen Milling Company for an exclusive license to use the Herendeen process for treating flour.

The consideration agreed upon was $10,000, of which $2,500 was paid in 1917.

This agreement contained a provision that the plaintiff might process the flour at its own plant, or send it to the mills of the Charles Herendeen Company at Danville, Ill. In 1918, the plaintiff had its flour processed at Danville, but found the process unsatisfactory, and in December, 1918, charged as a loss the entire $10,000. Later in 1919, this charge was re-entered on the books of the plaintiff; and equipment was installed at its plant at Pittsburgh for this process, which was used there during the year 1919. The process was not satisfactory, and the machinery used therefor was dismantled in 1920. The Commissioner allowed this item as a loss in 1919, but not in 1918.

In the year 1918, the plaintiff purchased a quantity of paper bread-loaf wrappers for use on loaves of the size prescribed by the United States Food Administrator during the World War. After the Armistice of November, 1918, the food regulations were canceled; and the plaintiff enlarged the size of its loaf, with the result that the wrappers bought in 1918 were too small. Consequently, the plaintiff used two wrappers for the balance of the year 1918, and on into the year 1919, when it procured other wrappers and abandoned those bought in 1918. The plaintiff then charged off 50 per cent. of the cost of the wrappers on hand December 31, 1918, as a loss which the Commissioner disallowed for the tax year 1918, but did allow for the tax year 1919.

### Conclusions of Law.

From these facts, we conclude that the waivers filed by the plaintiff were valid and binding; that the plaintiff is not entitled to deduct as losses the items claimed; and that the defendant is entitled to judgment in his favor.

### Discussion.

We will first discuss the question of the validity of the waivers. The plaintiff says they are not valid, because (a) not properly executed by the plaintiff, and (b) not properly executed by the Commissioner of Internal Revenue. There is no merit to either of these contentions. The waivers are signed by one or more executive officers, and the corporate seal is affixed. Surely, the signing of such a tax waiver, in order to secure further consideration of corporate tax liability, falls within the ordinary power of executive officers, and would not require additional special authority from the board of directors. Then, the corporation sought and obtained additional consideration of its tax liability by the Commissioner; and after it had obtained a large reduction of its tax liability by the final determination of that tax liability on July 7, 1925, acted as though the tax waivers were valid, and filed an appeal from the Commissioner's determination, a thing which would have been idle and useless, were the waiver null and void for want of proper corporate authority. It seems unconscionable to us for a taxpayer to sue for special consideration of its tax liability, and then when it has secured, not only one reconsideration of its tax liability, but several, to fall back and say, when the determination has been finally made by the Commissioner: It is too late now to collect these taxes; the waivers we sent you are not valid.

As to the acceptance of these waivers by the Commissioner, they were filed in his office; they bear what purports to be his signature; the Commissioner acted as though he had accepted them, by giving repeated consideration to the plaintiff's pleas for special consideration in abatement, which resulted in withholding collection while the plaintiff's books were being examined and re-examined. The signature of the Commissioner need not be affixed by him personally; and surely, under the facts of the present case, there must be a presumption that the signature was authorized and timely made.

We therefore have no hesitation in holding both of the waivers to be valid and binding. This conclusion is supported by the following cases: Reginald Hammond v. Carthage Sulphite Pulp & Paper Co., 34 F. (2d) 155. (Opinion by Bryant, D. J., November 3, 1928, U. S. D. Ct., Northern Dist. of New York; Welz & Zerweck v. Commissioner, 11 B. T. A. 1416; Trustees for Ohio & Big Sandy Coal Co. et al. v. Commissioner, 9 B. T. A. 617.

The second waiver would have expired by the terms thereof on June 14, 1926; and that being a date subsequent to the enactment of the Revenue Act of 1926, the case then fell within the provisions of that act, and therefore under the section 278(d) of that act (26 USCA § 1061), the authorized collection period was extended to March, 1930. U. S. v. Crook (C. C. A.) 18 F.(2d) 449 (certiorari denied 275 U. S. 532, 48 S. Ct. 29, 72 L. Ed. 410); Florsheim Bros. Dry Goods Co. v. U. S. (D. C.) 26 F.(2d) 505; Bank of Commerce v. Rose (D. C.) 26 F.(2d) 365.

On the merits of the case, the plaintiff is not entitled to recover. The item of $11,-000 for demolition of buildings was not a deductible loss. This property, as it stood, was

bought for the purpose of enlarging the plaintiff's plant. There was no loss sustained because of the demolition which was in contemplation at the time. the property was bought. This situation is directly covered by article 142 of Regulation 45: "When a taxpayer buys real estate on which is located a building which he proceeds to raze with a view to erecting thereon another building, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expense on account of the cost of such removal, the value of the real estate, exclusive of old improvements, being presumably equal to the purchase price of the land and buildings, plus the cost of removing the useless building."

The loss claimed on the Herendeen patent was allowed by the Commissioner as a deduction on the 1919 return; and, we believe, properly so. There had been no trial of the process by the plaintiff till 1919, when, for the first time, it installed the necessary machinery to make a test of the process. The accountants of the plaintiff charged this item back on the books of the plaintiff after it had first been claimed as 1918 loss. There was no error in so doing.

The loss claimed on the loaf wrappers was also allowed by the Commissioner on the 1919 tax account. We cannot, however, see that there was any deductible loss under the statute allowable for either the year 1918 or 1919. We cannot see that any of the provisions of section 234 of the Revenue Act of 1918 (40 Stat. 1077) as to deductions apply to the loss claimed on these wrappers. There was no shrinkage in inventory. There was no change in the market value. True, the usefulness of the wrappers to the plaintiff was changed, but that change would not, in our opinion, involve a deductible loss under the statute.

The Board of Tax Appeals has, in our judgment, correctly ruled as to these wrappers in its opinion, as follows: "The fact relied upon by petitioner is that the so-called Victory Wrappers were too small for its postwar loaves and could only be used by applying two wrappers to each loaf. This is said to have reduced the usefulness of the wrappers by one-half, and hence it is contended that one-half of the cost should be written down out of income. Market value was no less than cost; only the usefulness was changed. In our opinion there was neither loss nor reduced inventory. * * * "

Further, even if there is a deductible loss on account of these wrappers, it did not oc-cur until some time in the year 1919, when the actual use of these wrappers was discontinued by the plaintiff and the loss which it claims has been allowed to the plaintiff by the Commissioner on the 1919 tax liability.

On the whole case, the plaintiff cannot recover. Let judgment be entered for the defendant.