**NATIONAL INDUSTRIAL ALCOHOL CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 4929.

Court of Appeals of District of Columbia.
Argued Nov. 14, 1929.
Decided Feb. 4, 1930.

Motion for Rehearing. Reargument, and to Modify Judgment Denied March 1, 1930.

R. M. O'Hara, of Washington, D. C., for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, Sewall Key, and J. G. Remey, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a decision of the United States Board of Tax Appeals in a case involving income and profits taxes for the fiscal years ending May 31, 1919, and May 31, 1920.

Appellant company was engaged in the brewery business in New Orleans, La., from March, 1901 to November 3, 1919. It adopted as a trade-name for beer "Old Heidelberg." It spent in newspaper and souvenir advertising after March 1, 1913, the sum of $24,987.03, which was treated as ordinary expenses and deducted from gross income reported on its income tax returns.

On November 3, 1919, appellant abandoned the manufacture of beer and the use of its trade-name, and entered upon the business of manufacturing near beer. In August, 1921, appellant began the manufacture and sale of industrial alcohol, which was not made as a by-product of the near beer, but as a separate product. In 1923 the near beer business was discontinued.

In connection with the manufacture of beer, appellant had two brick buildings, separated by a driveway. Each was of the same dimensions: three stories high; 50x100 feet. The walls of the brewery building were 2 feet thick; and the walls of the cellar building were 4 feet thick, and contained cork for insulation purposes. This building was equipped with refrigeration pipes. The buildings in 1912 cost $115,348.93, and possessed a depreciated cost on May 31, 1918, including additions, of $124,119.09. The two buildings were constructed as a unit to be used in connection with the manufacture of beer. When the manufacture of beer was discontinued, following the adoption of prohibition, the brewery building and one floor of the cellar building were used in connection with the manufacture of near beer. The two upper floors of the cellar building and the vats therein, consisting of eight large steel vats and fifty wooden vats, were not used after November 3, 1919.

This case arose as the result of the Commissioner's disallowance of the amounts ex-

pended in advertising and souvenirs, which were claimed by appellant as deductions on account of the abandonment of its trade-name, and for an additional amount claimed for obsolescence or loss in connection with the two floors of the cellar building.

From the affirmance of the Commissioner's findings by the Board, this appeal was taken.

■ It was stated in the opinion of the Board that "petitioner claims a loss for the obsolescence of its good will, trade names and trade brands. It has heretofore been held that such items are not the subject of an obsolescence deduction within the meaning of the Act." This is true as to good will. A claim for loss of good will as the result of the termination of appellant's brewery business by prohibition legislation was properly refused by the Commissioner. Good will is not of that class of intangible property which can be made the basis of income tax reduction, unless it can be shown that the loss resulted from a sale of property for a depreciated value.

In Red Wing Malting Co. v. Willcuts (C. C. A.) 15 F.(2d) 626, 633, 49 A. L. R. 459, it was held that the loss of good will of a malting company as the result of prohibition cannot be a basis for deduction of income tax under the Revenue Act of 1918 (40 Stat. 1057). After an exhaustive review of the subject, the court said: "We have heretofore pointed out that good will has no existence separate and apart from an established business. With the termination of that business it is ended. While a capital asset, it is not the subject of purchase, sale, or assignment separate from the business itself. It is not an assignable asset distinct from the business. It is different in this respect from such intangibles as patents, contracts or franchises which may be sold. When a business is disposed of its value and realized selling price may be enhanced by the existence of good will. If sold at a loss, the loss of good will is reflected in the transaction. The claim is somewhat novel, therefore, and rather startling, that loss of good will can be made the subject of an independent claim for a tax deduction, separate and distinct from the business of which it is an incident. * * * To hold that a claimant is entitled to segregate good will from the property and business to which it is attached as an incident, and from which it is inseparable, and permit a separate deduction for its loss, might result in a double deduction and have far-reaching conse-

quences. If the court is to open the door to claimants for tax deductions under the statute for the loss of good will apart from the tangible property with which it is connected, the right should clearly appear from the statute. We think it does not so appear."

■ On the other hand, it has been held by the Board that loss sustained from the abandonment of a trade-name is properly deductible in the year in which the abandonment occurs; but it held that the difficulty encountered in the present case arises from the failure of the appellant to identify the expenditures making up the cost of establishing the trade-name. Undoubtedly a very large part of the expense incurred in advertising and souvenirs since 1913 resulted in the advancement of sales during the respective years, and as such was purely a business expense chargeable against the current income, as was done by appellant in respect of the entire amount so expended.

In the case of Richmond Hosiery Mills v. Commissioner of Internal Revenue (C. C. A.) 29 F.(2d) 262, 263, where the petitioner sought to restore to its capital account as invested capital a large amount expended in advertising a brand of hosiery under the trade name of "Wunderhose" which it had adopted and copyrighted, the court affirmed the finding of the Board to the effect that, while a substantial part of the advertising of the trade brand undoubtedly produced immediate benefits, it was unable from the showing made to segregate the sums expended as between capital and expense. On this point the court said: "No effort was made to have an expert audit the books to determine what proportion of the amount expended for advertising should be allocated respectively to expense and capital account. It is certain that some part, and probably the larger part, should be considered as an expense, and much weight is given to this conclusion by the charging of the total amount to expense initially."

In this case, as in that, the appellant has failed to sustain the burden of showing with reasonable certainty the amount chargeable to capital account, and, having charged the total amount to expense and made deductions accordingly, we agree with the Board that there is nothing before us upon which we can determine what amount can properly be attributed to the value of the trade-name.

■ We come now to the consideration of the claim of appellant for his loss sustained through the abandoned use of the two floors

of the cellar building. It appears from the evidence that to remove the steel vats from the two floors would require the dismantling of the cellar building, the doors being only 6 feet wide and the vats 22 feet in diameter. In support of appellant's contention that the two abandoned floors possessed no residual or salvage value, but represented a total loss, we think the evidence is ample. In determining this point, the nature of the building and the purpose of its construction must be taken into consideration. The building was designed for the brewery business alone, with walls 4 feet thick, insulated, and equipped with refrigerating pipes, in which was installed at the time of building the steel and wooden vats. The testimony shows that neither the two floors abandoned nor the vats on those floors had any value to appellant after November 3, 1919. The only use made of the building subsequent to that time was the use of the first floor until 1923 for the manufacture of a cereal beverage. To establish a loss, it is not essential that the fact or amount of the loss be determined by a sale of the property. Dean, Collector, v. Hoffheimer Brothers Co. (C. C. A.) 29 F. (2d) 668. "A loss may become complete enough for deduction without the taxpayer's establishing that there is no possibility of an eventual recoupment. * * * The taxing act does not require the taxpayer to be an incorrigible optimist." U. S. v. S. S. White Dental Mfg. Co., 274 U. S. 398, 47 S. Ct. 598, 600, 71 L. Ed. 1120.

It is not for the Commissioner or the Board to speculate as to the future use that may possibly be made of the property, or the value it may attain when so used, in the face of proof, as in this case, that the entire value to appellant ceased with the outlawing of his brewery business. We are of opinion, therefore, that appellant is entitled to deduction for the loss sustained to the extent of the value of the two floors together with the depreciated value of the vats therein contained.

The decision of the Board is affirmed as to good will and trade-name; and reversed as to allowance for loss of building.