## UNITED STATES v. HARDY et al.
### No. 1403.

District Court, S. D. West Virginia.
Nov. 21, 1933.

Okey P. Keadle, of Huntington, W. Va., and R. S. H. Dyer, of Washington, D. C., for plaintiff.

Hawthorne D. Battle, of Charleston, W. Va. (Price, Smith & Spilman, of Charleston, W. Va., on the brief), for defendants.

McCLINTIC, District Judge.

This is a suit filed by the United States of America to recover the sum of $19,962.52, together with interest thereon, from the defendants, Waller C. Hardy, Henry L. Terrie, James R. Harris, and C. Drummond Jones. The cause of action arises out of the alleged failure of the Harris-Hardy Company, a West Virginia corporation in which these defendants were stockholders, to pay certain income and profits taxes assessed against it for the year 1918. The facts are as follows:

Early in September, 1916, Waller C. Hardy, a resident of the city of Charleston, W. Va., and James R. Harris, a resident of the city of St. Louis, Mo., through certain business and social connections, secured from the Annheuser-Busch Brewing Association the exclusive sales agency for "Bevo," a new near beer malt beverage recently put on the market, for all counties in West Virginia, excepting only the counties of Wayne, Cabell, Putnam, Lincoln, Mason, Jackson, Roane, Marshal, Ohio, Brooke, and Hancock. In order to acquire this contract, Harris and Hardy agreed to provide the sum of $100,000 to finance the business. Whereupon, on September 26, 1916, these parties caused to be organized, under the laws of the state of West Virginia, the Harris-Hardy Company, with an authorized capital stock of $200,000, composed of 2,000 shares of common stock of a par value of $100 per share. Of the capital stock of the company, $69,900 was immediately subscribed for at its par value by parties other than Mr. Hardy and Mr. Harris. These subscriptions were later paid in cash.

At a meeting of the stockholders of the Harris-Hardy Company held on September 26, 1916, and at a meeting of the directors of the company held on October 4, 1916, the company agreed to purchase this exclusive sales contract for "Bevo" owned by Harris and Hardy for the sum of $100,000 to be paid for by the issuance and delivery to each of them of $50,000 par value of the common stock of the company. This purchase was consummated immediately, and the agency

contract was set up upon the books of the company at $100,000. The fair market value of this agency contract, which was assignable, at the time it was transferred to the Harris-Hardy Company by James R. Harris and Waller C. Hardy, was at least the sum of $100,000.

In the early part of the year 1918, the Harris-Hardy Company also purchased, for a cash consideration of $15,000, a similar agency contract with Annheuser-Busch Brewing Association for the sale of "Bevo" in certain counties in Southwest Virginia.

From its inception, the sole business of the company was the sale and distribution of "Bevo." Its business proved highly profitable until September, 1918; $80 a share being returned to the stockholders. During the period of its operation, the company's gross sales and gross profits were as follows:

| | Gross Sales | Gross Profits |
|---|---|---|
| Sept. 26, 1916 to Dec. 31, 1916.... | $108,309.60 | $16,256.39 |
| Jan. 1, 1917 to Dec. 31, 1917.... | 372,950.74 | 35,037.28 |
| Jan. 1, 1918 to Dec. 1, 1918.... | 585,662.17 | 56,264.55 |
| Mar. 4, 1919 to June 9, 1919.... | 32,553.00 | 3,078.60 |

The expenses of operation of the company from March 4, 1919, to June 9, 1919, were $4,481.96.

The stock of the company was closely held. However, some of it was sold for as much as $160 a share prior to September 1, 1918.

On September 16, 1918, acting under the authority of the Lever Act (40 Stat. 276), the President of the United States issued a proclamation prohibiting the making of malt liquors, including near bear, for beverage purposes on and after December 1, 1918. The immediate effect of this proclamation was to destroy completely the value of the agency contracts of the Harris-Hardy Company with the Annheuser-Busch Brewing Association for the sale of "Bevo," which was a near beer. The issuance of this proclamation rendered these contracts unmarketable and destroyed the sole business of the company. Whereupon, on October 18, 1918, the board of directors of the company, by resolution duly adopted, declared that the contracts of the company with the Annheuser-Busch Brewing Association had become valueless by virtue of the President's proclamation, and directed that the entire value thereof be charged off the books of the company as a loss. At the time this was done, the President's proclamation was for an indefinite time, and it appeared to the officers of the company that its contracts were permanently terminated. Such condition continued through the remainder of the year 1918.

During the month of December, 1918, the company sold no "Bevo," nor engaged in any other business of any kind or character. This condition continued until March 4, 1919, at which time the President of the United States rescinded his proclamation prohibiting the making of malt liquors, including near beer, for beverage purposes. Whereupon, the company again sought to market "Bevo" and continued to do so at a financial loss until June 9, 1919, when the company sold its agency contracts to John S. Dana for the sum of $15,000, and thereupon wound up its affairs and was duly dissolved under the laws of the state of West Virginia on June 9, 1919.

On March 10, 1919, Waller C. Hardy, the president of the Harris-Hardy Company, completed its tentative tax return for the year 1918, and mailed the same to S. A. Hayes, collector of internal revenue for the collection district of West Virginia, at Parkersburg, W. Va., with a check for $600, being one-fourth of the estimated tax due, as shown on the tentative return. The tentative return was stamped "Received" in the collector's office, March 11, 1919.

On April 12, 1919, Waller C. Hardy, president, and Henry L. Terrie, treasurer, of the company, signed and swore to the final income and profits tax return of the company for the year 1918 before F. W. Johnstone, notary public. On said date, i. e., April 12, 1919, this final return, together with a letter of transmittal and a check for the sum of $2,786.20, representing the full amount of the balance due on the tax, as shown on the return, each dated April 12, 1919, were duly and properly mailed to S. A. Hayes, collector of internal revenue at Parkersburg, W. Va. At this time at least five trains, leaving Charleston at intervals over the 24-hour period, carried mail from Charleston to Parkersburg daily. Due to the fact that most of the returns for the year 1918 were not filed until the middle of April, 1919, there was at the time a large accumulation and congestion of the mail in the collector's office at Parkersburg, so that it was impossible for the collector's office force to open all the mail for several days. The return of the Harris-Hardy Company was stamped "Received" in the collector's office on April 18, 1919, and was stamped by the cashier as "Received" on April 19, 1919. However, it is very significant that the check of the Harris-Hardy Company accompanying the return was deposited in the Parkersburg National Bank by the collector on April 18, 1919. The collector, though called as a witness, does not deny that this return was re-

948

ceived in his office prior to April 18, 1919. The court finds as a fact that this final return of the Harris-Hardy Company was filed with the collector of internal revenue for the collection district of West Virginia, on April 13, 1919.

The subpœnas, which are a part of the record herein, were issued by the clerk of this court on April 14, 1924. The return of the Marshal for the Southern district of West Virginia shows that a subpœna was delivered to him at Charleston on April 17, 1924, and was, on said date, served on Waller C. Hardy and Henry L. Terrie. The return of the Marshal for the Eastern division of the Eastern judicial district of Missouri shows that a subpœna, issued in this proceeding, was executed on the 21st day of April, 1924, by the delivery of a true copy thereof to C. Drummond Jones personally, and that the defendant James R. Harris could not be found.

It was stipulated in this proceeding that the four defendants in this suit were stockholders of the Harris-Hardy Company at the time of its dissolution on June 9, 1919; and received from the assets of the corporation, as liquidating dividends, the following amounts: Waller C. Hardy, $10,514; Henry L. Terrie, $6,836; James R. Harris, $9,896; and C. D. Jones, $7,754. It was further stipulated that the net income of the Harris-Hardy Company for the year 1918 was the sum of $40,269.98, upon which the tax would be $15,622.95, subject, however, to the claim of the defendants of a loss of $115,000 asserted by them herein, which claim, if sustained herein, would wipe out the entire amount of the tax claimed by the plaintiff.

Upon the foregoing findings of fact the following questions are presented:

1. Whether the Harris-Hardy Company suffered a loss deductible from its income for the year 1918 on account of the alleged destruction of the value of its contracts with Annheuser-Busch Brewing Association.

2. If such loss did not occur in the year 1918, whether or not the Harris-Hardy Company suffered such a loss in the year 1919 upon the sale of its said contracts in June, 1919, as to entitle it to deduct such loss from its income for the year 1918.

3. Whether or not the claim asserted herein by the United States is barred by the statute of limitations.

I shall now consider these contentions separately in their order:

The provision of the Revenue Act of 1918 pertinent to the first contention is section 234

(a), 40 Stat. 1077, which provides as follows:

"That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
* * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise."

The Treasury Department, in article 143 of regulations 45, relating to income tax and war profits tax under the Revenue Act of 1918, has construed this section of the act as follows: *"Loss of Useful Value.*—When through some change in business conditions the usefulness in the business of some or all of the capital assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in the business, he may claim as a loss for the year in which he takes such action the difference between the cost or the fair market value as of March 1, 1913, of any asset so discarded (less any depreciation sustained) and its salvage value remaining. This exception to the rule requiring a sale or other disposition of property in order to establish a loss requires proof of some unforeseen cause by reason of which the property must be prematurely discarded, as, for example, where an increase in the cost of or other change in the manufacture of any product makes it necessary to abandon such manufacture, to which special machinery is exclusively devoted, or where new legislation directly or indirectly makes the continued profitable use of the property impossible."

In the case of Dean, Collector, v. Hoffheimer Brothers Co. (C. C. A. 6, 1928) 29 F.(2d) 668, 669, the facts showed that, as a result of the passage of the Food Control Act (40 Stat. 273) and the imminence of prohibition, the taxpayer was compelled to close its distillery in September, 1917. Later, on May 2, 1918, it decided to discontinue its business, the value of which was at that time $223,631.11. On June 29th of the same year, it charged off its books the sum of $140,152.32. The property was sold in April, 1919, for $25,000. In its income tax return for the year 1918, the appellee claimed as a loss the sum of $140,152.32 so charged off its books. This loss was disallowed by the Commissioner of Internal Revenue, who contended that the loss, if suffered at all, occurred in the year 1919. The Circuit Court of Appeals in this proceeding affirmed the judgment of the District Court which sustained the action of the taxpayer in charging off such amount as a loss in the year 1918. The court in its

opinion said: "The applicable Revenue Acts are the Act of 1916 (39 Stat. p. 756), as amended by the Acts of 1917 (40 Stat. p. 300) and 1918 (40 Stat. p. 1057). All of these acts permit a corporation to deduct from its gross income losses sustained during the taxable year not compensated for by insurance or otherwise if incurred in trade or business. We have been cited to no court decision construing these provisions with reference to a case like this, but the Treasury Department, in article 143 of Regulation 45, quoted in the margin, has construed them as applicable to a loss resulting from new legislation which has made the continued profitable use of the property impossible. This, we think, is a fair interpretation. The regulation is even more authoritative as to methods of ascertaining the loss, since they are administrative functions with which the statute does not deal. And neither under the language of the regulation nor under the decisions of the Board of Tax Appeals (Dilling Cotton Mills, 2 B. T. A. 127, and Automatic Transportation Co., 3 B. T. A. 505) is it necessary that the fact or amount of loss be ascertained by sale. It may be ascertained by other means; and when so ascertained, as here, is, in our opinion, a completed loss deductible from the gross income for the year in which it was sustained.  *  *  *"

In the case of Liberty Baking Co. v. Heiner, Collector (C. C. A. 3, 1930) 37 F.(2d) 703, 705, the right of the taxpayer to deduct as losses, under the Revenue Act of 1918, two separate items which are pertinent in the instant case, were considered by the court. The taxpayer had, in the year 1917, purchased an exclusive license for the use of a certain process for treating flour at a cost of $10,000. After some experiments, the process was permanently abandoned by the taxpayer in the year 1919. However, the taxpayer had in the year 1918 temporarily stopped the use of the process, but had again continued it in the year 1919. In regard to this item, the court held that the loss was sustained in the year 1919. It is to be noted that the loss so allowed was an intangible right which became useless. However, no sale thereof occurred.

The facts in regard to the second item considered were that in the early part of the year 1918 the plaintiff purchased a quantity of paper bread wrappers for use on loaves of the size prescribed by the United States Food Administrator during the war. In November, 1918, after the armistice, the food regulation, prescribing the size of loaves of bread, was canceled, and plaintiff was compelled to en-large the size of its loaves, with the result that the wrappers were too small, it being necessary to use two wrappers on each loaf of bread. The plaintiff charged off 50 per cent. of the cost of the wrappers on December 31, 1918, as a loss in the abandonment of wrappers. The District Court [34 F.(2d) 513] held that there was no deductible loss under the statute. However, the Circuit Court of Appeals reversed the finding in the District Court and sustained the action of the taxpayer in charging off 50 per cent. of the cost of the wrappers on December 31, 1918. The court, in its opinion, said: "The wrappers were purchased of the size prescribed by the government. Later the food regulations were canceled, which was a matter far beyond the control of the plaintiff. It was natural that the normal size of the loaf thereafter should govern, and a clear loss resulted to the plaintiff by reason of the change of conditions. It would seem to us correct for the plaintiff to charge off 50 per cent. of the cost of the wrappers on hand December 31, 1918, as a loss which it had sustained in that year."

The right of the taxpayer to charge off as a loss the value of such intangible property as leases, copyrights, patents, and franchises has been frequently recognized. Greever v. Commissioner, 6 B. T. A. 587; Appeal of Adams Motor Co., 4 B. T. A. 589; Klein, Federal Income Taxation, page 494 and page 517.

A loss may be complete enough for deduction without the taxpayer's establishing that there is no possibility of eventual recoupment. The Taxing Act does not require the taxpayer to be an incorrigible optimist. United States v. S. S. White Dental Mfg. Co., 274 U. S. 398, 47 S. Ct. 598, 71 L. Ed. 1120; Wheeling Tile Co. v. Commissioner (C. C. A. 4, 1928) 25 F.(2d) 455.

It clearly appears to the court that the contracts of the Harris-Hardy Company with the Annheuser-Busch Brewing Association were of no value on December 31, 1918. At that time, the proclamation of the President which prevented the manufacture of "Bevo," being the sole subject-matter of such contracts, was effective for an indefinite period. Under such conditions, clearly there would be no market whatever for a franchise right to distribute this product.

The contracts, although assignable, could not be sold for any price. The company recognized that such was the case, and, acting under the authority of its board of directors, charged off its books in October, 1918, the sum

of $100,000. The contracts cost the company $115,000, of which amount $100,000 was charged off as a loss in 1918. This course was entirely justified, and, except for the unexpected rescission of the President's proclamation, even the remaining part of the cost would never have been realized. In view of this situation, I am of opinion that the Harris-Hardy Company is clearly entitled to the deduction of the sum of $100,000 as a loss in the computation of its income tax for the year 1918. Since the company's net income for the year 1918, as stipulated herein, was $40,219.98, without this deduction, it necessarily follows that the allowance of this loss, in the amount of $100,000, wipes out such net income completely, and the tax based thereon.

In reaching this conclusion, I am not unmindful of the decisions of the Supreme Court of the United States holding that the destruction of the good will of a brewing concern resulting from the passage of the Eighteenth Amendment, and other prohibition legislation, does not create a deductible loss in the purview of the act. See Clarke v. Haberle Crystal Springs Co., 280 U. S. 384, 50 S. Ct. 155, 74 L. Ed. 498; Renziehausen v. Lucas, 280 U. S. 387, 50 S. Ct. 156, 74 L. Ed. 501. The basis of these decisions was that good will was not such property as is embraced in section 234 (a) (7) of the Revenue Act of 1918 allowing as deductions "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." In these cases, the taxpayer contended that the good will had become obsolete. The court held that the word "obsolescence" is limited by the phrase "exhaustion, wear and tear," which latter phrase relates only to property having separate existence, distinct from the business itself; that good will was not subject to wear and tear, hence was not subject to obsolescence and was not within the purview of this section of the act. That these cases are so limited is shown by the later decision of Burnet v. National Industrial Alcohol Co., 282 U. S. 646, 51 S. Ct. 265, 75 L. Ed. 592, in which the Supreme Court sustained the allowance for obsolescence of buildings caused by the imminence of national prohibition. The cases consider solely the question of obsolescence, and, therefore, are not pertinent to the facts under consideration in the instant case.

In view of my conclusion as to the first question of law involved, it becomes unnecessary to consider the second question relating to the right of the taxpayer to credit on its 1918 income the loss, if any, suffered by it in the year 1919. Of course, if the loss was suffered in the year 1918, as I have so found, it could not have occurred again in the year 1919. However, in passing, I call attention to the case of Auburn & Alton Coal Co. v. United States, 61 Ct. Cl. 438, in which it was held that a loss for the sale of capital assets in the year 1919 could not be deducted from taxpayer's income for the year 1918. Certiorari denied, 273 U. S. 714, 47 S. Ct. 107, 71 L. Ed. 854. To the same effect, see, also, Appeal of Manhattan Brewing Co., 6 B. T. A. 952.

The third question involved in this case is whether or not this suit is barred by the statute of limitations. Section 250 (d) of the Revenue Act of 1921 (42 Stat. 265) provides that "no suit or proceeding for the collection of any such taxes due under this Act or under prior income, excess-profits, or war-profits tax Acts, * * * shall be begun, after the expiration of five years after the date when such return was filed. * * *" In view of my finding of fact that the income tax return of the Harris-Hardy Company was filed on April 13, 1919, it clearly appears that the five-year statute of limitations contained in this act had expired when the præcipe was filed with the clerk of this court on April 14, 1924. No waivers were filed by any parties.

It has been stipulated in this proceeding that, if the court should be of opinion to uphold any of the contentions of the defendants herein, there is no sum due to the plaintiff by the defendants. It necessarily follows, therefore, from my views hereinbefore expressed, that there should be judgment for the defendants that there is no sum due to the plaintiff from the defendants.