## E. VAN NOORDEN & CO. v. UNITED STATES.
### No. 5281.

District Court, D. Massachusetts.
Oct. 1, 1934.

E. Kendall Bragg, of Boston, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., for the United States.

McLELLAN, District Judge.

This petition of E. Van Noorden & Co., a Massachusetts corporation, is for the recovery of taxes alleged to have been wrongfully collected from it by the Collector of Internal Revenue for the year ending February 29, 1928. Many of the facts are not in dispute and are as stated in an agreed statement of facts on file.

The petitioner duly filed its income tax return for the fiscal year ending February 29, 1928, and an error of approximately $250, appearing on the face of the return, was corrected by the Collector's office and an as-

sessment of something over $12,000 was made and duly paid. As a result of an examination of the return and petitioner's books, a certificate of overassessment was issued to the petitioner in the amount of $245.96, and this amount was refunded on October 17, 1929.

Albert E. Saunders, a witness called by the respondent, testified in substance, and I find, that in his capacity as Internal Revenue Agent he made an examination of the petitioner's books and records for the fiscal year ending February 29, 1928; that upon its face the return showed an error in the computation of tax liability which had been corrected by the Collector's office; that he (the witness) went to the petitioner's office some time in May, 1929, and asked for Miss Julia Norgrave, assistant treasurer, who had signed the return; that she produced books and records, and upon examination the witness reached the conclusion that the return was inaccurate and recommended that the tax be reduced by $245.96; that he discussed the findings with Miss Norgrave and with Mr. Kiefer. He then prepared a so-called closing agreement, Form 866, which set out the total aggregate tax liability as determined in his examination; that he handed the agreement to Miss Norgrave to have the responsible officer of the corporation sign it and place the corporate seal upon it; that this was done and the closing agreement returned to him; that he (the witness) prepared the closing agreement with the exception of the title of Mr. Kiefer; that he was not sure whether Mr. Kiefer was president, treasurer, or general manager, but on all the evidence I find he was all three; that he took the form out to the assistant treasurer, Miss Norgrave, to have the responsible officer of the corporation sign it; that Mr. Kiefer's title as president apparently was inserted at the office of the taxpayer; that thereupon the closing agreement, signed by Mr. Kiefer, and with the corporate seal attached, was handed to the witness and he turned it in to his office and it was subsequently sent to Washington.

This closing agreement, dated May 14, 1929, a copy whereof is annexed to the agreed statement of facts, was executed and approved on June 29, 1929, by the Acting Commissioner of Internal Revenue, and was approved by the Acting Secretary of the Treasury July 9, 1929.

On February 10, 1931, the petitioner made a claim for refund on account of the Massachusetts excise taxes which accrued during the taxable year, and on October 9, 1931, the Commissioner of Internal Revenue notified the petitioner of the disallowance of its claim for refund. The dates and amounts of payments to the commonwealth of Massachusetts on account of Massachusetts excise taxes were as follows:

| | | |
|---|---|---|
| 1927 Excise Tax paid October 14, 1927 | $2,368.75 | |
| 1927 Excise Tax paid April 11, 1930 | 290.56 | $2,659.31 |
| 1928 Excise Tax paid October 19, 1928 | $2,530.02 | |
| 1929 Excise Tax paid April 11, 1930 | $3,292.13 | |

The taxpayer has had the benefit of a deduction of $2,368.75 of the said amount of $2,659.31.

In its claim for refund the petitioner stated that the amount allowable to it in connection with the payment of Massachusetts excise taxes was $6,282.91. The respondent now concedes that the petitioner is entitled to a deduction of $6,112.71. The amount of the refund to which the petitioner was entitled but for the signing of the closing agreement, based upon an allowable deduction of $6,282.91, was $832.49, which last-named sum, with interest thereon, petitioner seeks to recover in this action. In view of the conclusion at which I feel I must arrive in connection with the closing agreement, it is unnecessary to pass upon the slight difference in the amount of refund based upon these two figures of $6,282.91 and $6,112.-71.

In the agreed statement of facts, the petitioner reserved the right to object to the validity of the closing agreement, and at the trial counsel for the petitioner contended that without a vote of the board of directors, Mr. Kiefer, who was president, treasurer, and general manager of the corporation, had no authority to execute the agreement and that the petitioner is not bound thereby.

The petitioner's by-laws provide, in part, as follows:

"The board of directors shall have the general direction, management and control of all the property, business and affairs of the corporation. They shall determine the compensation and duties, in addition to those fixed by law, and these by-laws, of all officers, agents, clerks and servants of the corporation.

"The president shall preside at all meetings of the stockholders and directors and shall perform such other duties as may be given to him by the corporation.

"The treasurer shall, subject to the supervision and control of the board of direc-

tors, have the custody of the funds and of the seal and of all the valuable papers of the corporation. He shall sign all deeds, promissory notes, checks, drafts, assignments for securities, proxies and all other instruments in writing."

Mr. Mittel, vice president and secretary of the petitioner's board of directors, testified and I find that there was no vote of the board authorizing or ratifying the execution of the closing agreement; that the board of directors did not authorize the filing of a claim for refund or the bringing of the present action; and that the board of directors on the day of the trial ratified the bringing of this suit.

■■■■ It seems unnecessary to cite cases for the proposition that limitations of the ordinary authority of corporate officers contained in the corporate by-laws do not affect the rights of persons who have no knowledge of such limitations. While, so far as I have been able to learn, there is no case actually deciding the question as to the authority of a person holding the offices which Mr. Kiefer held to sign a closing agreement, it would seem that the execution of such an instrument was within his authority. See Piedmont Wagon & Manufacturing Co. v. United States (Ct. Cl.) 6 F. Supp. 125; L. J. Christopher Co. v. Commissioner, 60 App. D. C. 368, 55 F.(2d) 530; Philip Carcy Manufacturing Co. v. Dean (C. C. A.) 58 F.(2d) 737; Liberty Baking Co. v. Heiner (D. C.) 34 F.(2d) 513, affirmed (C. C. A.) 37 F.(2d) 703; Loewer Realty Co. v. Anderson (C. C. A.) 31 F.(2d) 268; Hammond v. Carthage Sulphite Pulp & Paper Co. (D. C.) 34 F.(2d) 157—all dealing, not with closing agreements, but with an officer's authority to execute a corporate waiver, and with the effect of the government's reliance upon the apparent scope of an officer's authority.

Under the circumstances presented by the agreed statement of facts and the oral testimony, I conclude that the effect of the closing agreement is not to be avoided upon the ground of the president's lack of authority to execute it.

The effect of a closing agreement has been considered by the Circuit Court of Appeals in this circuit in Perry v. Page, Collector (C. C. A.) 67 F.(2d) 635, and there can be no doubt, as petitioner virtually concedes, that a duly executed closing agreement precludes recovery in an action of this kind.

Let judgment be entered for the respondent.