940

## PROVIDENCE JOURNAL CO. v. BRODERICK.
### No. 2944.

District Court, D. Rhode Island.
Dec. 16, 1938.

Harold B. Tanner, of Providence, R. I., for plaintiff.

J. Howard McGrath, U. S. Atty., of Providence, R. I., and ·Lester L. Gibson, Sp. Asst. to Atty. Gen., for defendant.

MAHONEY, District Judge.

This is an action of the case in assumpsit brought by the Providence Journal Company, a corporation, incorporated in the year 1884 under the laws of the State of Rhode Island and located and doing business in the City of Providence, in said state and district of Rhode Island, against Joseph V. Broderick, individually and as Collector of Internal Revenue in and for said District of Rhode Island, for the recovery of certain income taxes alleged to have been assessed and collected illegally from said plaintiff in the sum of $9,216.48 and interest paid thereon for the taxable year of 1933.

Jury trial has been waived.

The parties hereto have filed a stipulation as to certain facts and the plaintiff has presented additional evidence, together with the testimony of certain witnesses. At the conclusion of the plaintiff's case, the defendant filed a written motion for judgment. It was denied at that time. The defendant then rested and renewed his motion. The parties were allowed time within which to file briefs and present oral arguments. The matter has been argued. The parties have filed requests for findings of fact.

The plaintiff is engaged in the printing and distribution of certain newspapers. Its offices and plant were located on one of the main streets in the City of Providence. In the year 1925, it was determined by said plaintiff that the time would come when it would have to abandon its present location and ·move to some other site. It was then considered advisable to look for such other site, that it might have it in its possession at the time when it became necessary to use it for that purpose. The plaintiff maintains that it had no intention of building in the immediate future, and that it sought a site for a future home and for investment purposes in the meanwhile.

On October 1, 1925, it bought certain land with buildings thereon in the City of Providence for the sum of $535,000. The evidence shows that, of this purchase price, the plaintiff estimated that the buildings cost $129,491.80. The premises so purchased were several city blocks removed from the location on which plaintiff maintained and carried on its business. At the time of the purchase of said premises, the property was subject to a lease held by the Rhode Island Motor Mart, expiring on June 1, 1934, and another lease held by Gladding Dry Goods Company, expiring on May 1, 1934. There were other tenants of the premises.

Prior to said purchase, the plaintiff had ascertained that certain portions of the real estate were subject to said leases and that other portions were so rented. It was then estimated by the plaintiff that the rents from said buildings would produce income of about $4\frac{1}{2}\%$ net on the investment of $535,000; that said property would probably be resaleable without loss; and that the net rentals over a period of years were large enough to cover the cost of the buildings so as gradually to absorb the loss which would result from their demolition, if and when it took place after the termination of the leases. The plaintiff maintains, and has submitted testimony to demonstrate, that at the time of the purchase it had no intention of razing the buildings either immediately or at any time prior to June 1, 1934; that it did not then consider buying any of said leasehold interests; and that it assumed that the said tenancies would continue.

But under date of October 8, 1925, it is set forth in the minutes of the Board of Directors that: "The future need of more ample space for our continued growth has long been recognized, and informally discussed at meetings of the directors. In line with this sentiment, the President, after conference with the Directors, purchased for the company the entire block with buildings thereon bounded by Fountain, Mathewson, Sabin, and Union Streets. The purchase money was derived from the sale of Liberty Bonds held by the company."

This action was approved on February 3, 1926, in setting up on the books of the plaintiff as of December 31, 1925, a reserve of $100,000 for a new building to be erected on the site which had been recently purchased. Additional sums were voted as a credit reserve for such new building at various times up to and including December, 1931.

Certain officers of the company had taken a trip for the purpose of inspecting modern newspaper plants, and in September 1929 the expense of said trip was approved by the Board of Directors. A report of said trip was made at the meeting of the Board of Directors in October, 1929. Discussion was had at a meeting of the Board of Directors in November, 1929, relative to the surveys and plans of the proposed new building.

From a letter dated May 15, 1931, which has been introduced as an exhibit in the case, it is learned that the treasurer of the plaintiff, in writing to the Commissioner of Internal Revenue stated that: "This real estate was obtained for the express purpose of acquiring the land and erecting a new building at the expiration of the lease then in force, which has a period of one hundred and four months to run."

The plaintiff's publisher, who was a member of the Board of Directors, and General Manager at the time the above described letter was written, testified that he considered the language of the letter a reasonable interpretation of the intention of the plaintiff company.

Another letter, which is also an exhibit, from the plaintiff to the Commissioner of Internal Revenue, contains the following:

"Explanation of Items.

"(1) Prior to October 1, 1925, the taxpayer was desirous of purchasing land upon which to erect a new building to be used by it in pursuit of its business activities.

"After a diligent search of properties suitable for its needs the taxpayer was obliged to consider the purchase of a parcel of land known as the Fountain Street property, upon which were erected buildings varying in age from 20 to 40 years. These buildings enhanced the value of the property beyond the land value, due primarily to being subject to leases expiring May 31, 1934.

"It was estimated that the net income from the buildings for the period from October 1, 1925 to May 31, 1934 would be approximately $216,666.66, based on an annual income of $25,000, for 8⅔ years. This amount was considered sufficient to warrant the purchase of the land with the buildings thereon and to reimburse the taxpayer for the excess cost of the property over the land value which was applicable to the buildings.

"It was therefore decided to purchase the property but to postpone the erection of a new building until May 31, 1934, the date upon which the leases on the old buildings would expire.

"The cost value of the buildings so purchased was determined by the application of the ratio, of the assessed value of the buildings to the total assessed valuation of both land and buildings, to the total cost of the property. * * *"

In the year 1929, the plaintiff determined that the time was arriving when a new plant would be needed. Then it was that the plaintiff for the first time considered the preparation of plans for a building on the new site, and the feasibility of buying in the lease of the Rhode Island Motor Mart. The price demanded by the lessee for the surrender of the lease was too high. Business conditions later in that year brought an end to such considerations. However, in 1933, owing to the business depression, the Rhode Island Motor Mart defaulted on its payments and surrendered its lease. The Gladding Dry Goods Company terminated its lease through mutual understanding; and the other tenants were required to vacate. Demolition of the buildings was begun on May 1, 1933, and completed in December of the same year.

The plaintiff maintains that its tax returns and supplemental affidavits show that the records from the office of the treasurer of the plaintiff indicated a

"definite intention to demolish the buildings in 1934 and erect a new plant on the site", and the property was not purchased purely as an investment. Its business was and is that of publishing newspapers. It is not in the real estate business.

It set up an amortization account with the cost of the buildings at $132,274.60, which included improvements and which were spread over a period extending to the year 1934. It took depreciation on that basis for the years 1925, 1926, 1927 and 1928. The Commissioner of Internal Revenue allowed this basis for the years 1925, 1926 and 1927, thus accepting the fact that the cost of the buildings in 1925 was $132,274.60, which included improvements and which were spread over a period extending to the year 1934. He refused for the year 1928 to permit this basis of 104 months from the date of purchase to the date of the termination of the leases, and insisted that the buildings had a remaining life of twenty years.

It has been stipulated by the parties hereto: "that the undepreciated balance of cost, the allowance of which is in dispute between the parties, is $67,028.91, and that if any recovery is adjudged to the plaintiff said sum of $67,028.91 is the proper factor of undepreciated balance to be employed in the calculation of any such recovery."

On November 17, 1936, the plaintiff filed its claim for refund and on January 30, 1937, it was notified that the claim for refund would be disallowed, and on March 8, 1937, formal notice of disallowance was mailed to the plaintiff.

The plaintiff maintains that when it acquired its new site in 1925, the value of the land exclusive of improvements, was not equal to the purchase price plus the cost of removing improvements, and that the buildings were valuable as rentable and were not useless buildings.

It claims that an actual loss was sustained by it in 1933, in excess of $67,028.91, when the buildings were razed in that year, and that said loss was not compensated for by insurance, or otherwise.

This claim involves the application to the facts of Section 23, subdivision (f) of the Revenue Act of 1932, 47 Stat. 179, 26 U.S.C.A. § 23(f), and of Article 172 of Regulations 77 thereunder.

The plaintiff bases its right to recovery on the rebuttable presumption contained in the language of the regulation. It maintains that if the intention was solely to demolish and rebuild, the presumption may be made that the buildings had no value, and that the full purchase price was paid for the land. It urges, however, that if the intention was to retain the buildings as an income producing investment, at least during the period long enough properly to amortize its purchase price, and then to demolish, or it is otherwise clear that the buildings were useful and were to be used for other purposes, there is no basis for the presumption that the buildings had no value and that the entire purchase price was paid for the land.

It states that in the instant case the proof is that the purchase price was more than the value of the land, and was so considered by the plaintiff and by the Commissioner of Internal Revenue on audit of the tax return.

The plaintiff submits that the uncontradicted evidence shows that a definite price in excess of the land was paid for the buildings; that it actually lost in the tax year the amount it claims; that the Commissioner of Internal Revenue allowed depreciation on the basis that the buildings had value originally and when they were demolished, and that the buildings were income producing and not useless. For these reasons, it is asserted that the case is unique. The plaintiff states that it is immaterial that it contemplated when it purchased the premises the razing of the buildings with a view to erecting on the site another building probably at but not until the expiration of a lease to run 104 months thereafter.

The findings of fact are:

(1) That the facts are as stipulated between the parties in paragraphs 1 to 7 inclusive of the Stipulation of Facts filed.

(2) That the plaintiff, at the time of the purchase of the parcel of land known as the "Fountain Street property", upon which was situated buildings varying in age from twenty to forty years, intended to demolish the said buildings, since the purchase was made for the primary purpose of erecting a new and modern home for itself upon obtaining possession of the property.

(3) That the plaintiff carried out the purpose of the purchase and at the date of the demolition of the buildings the undepreciated value thereof was $67,028.91.

The courts which have passed upon the application of the law and the regulation

to the various cases presented have sought out the "intention" of the taxpayer at the time of purchase. They have determined that when real estate is purchased and at that time it is intended to raze the buildings thereon, a deductible loss is not sustained when the buildings are demolished. And when it is shown that the taxpayer had no intention at the time of purchase to demolish, and subsequently does destroy the buildings, then the value of the structures thus destroyed becomes important. It is this condition which the presumption of the regulation is designed to meet.

In the case entitled Union Bed & Spring Co. v. Commissioner of Internal Revenue, 7 Cir., 39 F.2d 383, at page 385, the Court stated that:

"Petitioner is not claiming credit for the entire loss, but for only the value of the property actually destroyed, based on 1920 valuation, less depreciation and salvage. We think this is the proper method of computation, and quite as fair as attempting to allocate the purchase price to the demolished parts, which would be very difficult indeed, if not impossible.

"Unless precluded by Treasury regulation 45 from claiming the loss as a credit, we think petitioner is clearly entitled to it under the statute. The statute and the regulation are to be construed together, and, if there be a conflict, the regulation must give way. We think, however, that there is no conflict, and that the regulation raises nothing more than a rebuttable presumption. If it raises more, then there is a sharp conflict. In that event the regulation would presume that the value of the property with the parts demolished would be equal to the purchase price, which is contrary to the uncontradicted evidence. Thus we would have a situation coming clearly within the statute, and the statute inoperative by reason of the regulation, which the law will not countenance.

"We think the true test, in this and in similar cases, is the intention of the taxpayer. If he intends, at the time of purchase, to demolish and rebuild, then the cost of so doing must be considered as part of capital investment, which is consistent with the statute and the regulation. But if, at the time of purchase, he does not intend to repair, or intends to repair or change but partly, and after the deal is made he decides to make changes and repairs other than those first contemplated, and in so doing he sustains a loss, he is brought within the terms of both the statute and the regulation, for the presumption raised by the regulation is overcome by the facts."

The facts here prove that the plaintiff desired the site for a future home for its newspaper business and also at the time of purchase it intended to demolish the buildings when the proper time arrived. In Griffin v. Commissioner, 17 B.T.A. 255, 256, it is set forth that: " * * * The fact that a definite part of the cost is attributable to the buildings is not material; clearly it was not a building or buildings which petitioner desired, but a location for the proposed apartment house. It would certainly be unreasonable not to look beyond the money consideration involved in a transaction in order to determine gain or loss, where a building was purchased for $7,500 and almost immediately disposed of upon voluntary demolition for $25. The motivating cause for such destruction and disposition was the improvement of the land for some purpose other than that for which it was then being used."

The plaintiff purchased the property with the expectation that it would produce income up to the date of demolition of the buildings. It bought it subject to certain leases. It allocated a portion of the purchase price to the buildings.

An examination of the authorities show that neither of these elements are determinative of the question. It is the intention of the taxpayer which governs. At the time the plaintiff purchased the property the demolition of the buildings was contemplated. It acquired the site with the definite intention of removing the buildings. The undepreciated value of the buildings destroyed became a part of the plaintiff's capital investment. Liberty Baking Co. v. Heiner, D.C., 34 F.2d 513; Eaton v. Commissioner of Internal Revenue, 9 Cir., 95 F.2d 628.

It is the decision of this court that judgment with costs be entered for the defendant.